UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. Action No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Stefan D. Cassella, Michele L. Crawford, for Government.

Gerald Kadish, Zegen & Fellenbaum, New York City, for Claimants.

## *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently before the Court is the United States' motion to dismiss the Fifth Round Petitions of Khawaja Qadeer Ahmed ("Ahmed") and Commercial Bank of Kuwait ("CBK"), which were filed pursuant to 18 U.S.C. § 1963($l$) ("L–Claim"). For the reasons stated below, the motions to dismiss will be denied.

### Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motions to dismiss these L–Claims.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and ·Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks, including those at Bank of New York ("BNY"). By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. See Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second, Third, Fourth and Fifth Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture); Fourth Order of Forfeiture (December 21, 1994); Fifth Order of Forfeiture (September 20, 1996). Attached to the Fifth Order of Forfeiture, which is relevant to the L–Claims presently before the Court, was the Fifth Supplemental List of Forfeited Property.[2]

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement,

---

**2.** The United States has suggested that only a portion of the $400,000 Ahmed seeks may have been included in the Fifth Order of Forfeiture. Ahmed, whose Fourth Round claim was dismissed on just such a jurisdictional ground, *see United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of Khawaja Qadeer Ahmed),* 923 F.Supp. 264 (D.D.C.1996), vigorously disputes that the funds were not forfeited pursuant to the Fifth Order. Because this issue goes to the Court's jurisdiction, the Court cannot as-

sume, as the government does, that the property was included in the Fifth Round. While the issue of subject matter jurisdiction can always be raised at any point in the proceedings, the Court is persuaded, at least at this stage of the proceedings, by the petitioner's memorandum, and attachments thereto, that the $400,000 at issue was included in the excess funds from the New York liquidation and forfeited pursuant to the Fifth Round.

forfeited assets were to be disbursed in equal amounts to the Worldwide–Victims–Fund and the U.S. Fund. *See* Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of CenTrust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, as of July 1996, the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[3]

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Fifth Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period from November 15, 1996 until December 23,

1996 in eleven major newspapers of general circulation including the *Wall Street Journal,* the *New York Times,* the *International Herald Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and *USA Today. See* United States Notice to the Court at I & Exhibit A (Docket No. 1800). In addition, personal notice was sent to 163 persons and entities. *Id.* Through a timely filed Fifth Round L–Claims, the petitioners have asserted interests in funds in BCCI (Dubai)'s account maintained at BNY.

For the purposes of this motion, the Court assumes true the facts alleged by the both petitioners in their L–Claim. On July 3, 1991, Ahmed instructed his business associate to direct Ahmed's bank, Middle Eastern Bank ("MEB") of Karachi, Pakistan to transfer $US400,000 from his MEB account to his account at Bank of Credit and Commerce (Emirates) in Dera Dubai ("BCCE"). However, Ahmed's business associate made a typographical error in the instructions to MEB, directing the transfer to Ahmed's account at BCCI (Dubai). The payment order issued by MEB read as follows:

> To the debit of our acct pls adv n pay val 3–7–91 USD.400,000/(USD FOUR HUNDRED THOUSAND ONLY) to Bank of New York N.York for CR Acct No. 8900049545 of BCCI Deira, Dubai Br acct with them fvg K.Q. Ahmed A/C No. 1043341.

On July 4, 1991, Ahmed caught the error and advised MEB, which sent a telex advising BCCI, through correspondent BNY, to reverse the order because Ahmed's account was with BCCE not BCCI. However, July 4th was a national holiday in the United States, and no action was taken to reverse the order prior to the freeze on BCCI's assets which was imposed on July 5, 1991.

The facts relating to CBK's L–Claim are similar. On August 15, 1991, CBK was instructed by a customer to issue a payment order to BCCE for credit to the account of

---

**3.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at 1 (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney

General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

Fatema Taher. On August 20, 1991, the bank issued the payment order, but instead of sending the payment through BCCE, it was sent to BCCI (Dubai) via BNY, acting as CBK's correspondent in New York. On September 5, 1991, CBK received an inquiry from Fatema Taher, claiming non-receipt. Upon inquiry, BNY confirmed that BCCI (Dubai), as instructed in the payment order, had been paid—not BCCE. Shortly thereafter, CBK was advised by CBK that the payment could not be refunded due to the freeze on BCCI's assets which had been in effect since July 5, 1991.

## Discussion

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[4] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[5] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was

vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination. 18 U.S.C. § 1963(*l*)(6).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United*

---

**4.** 18 U.S.C. § 1963(a) provides, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
(1) any interest the person has acquired or maintained in violation of section 1962;
(2) any—
(a) interest in;
(B) security of;
(C) claim against; or
(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962, and
(3) any property constituting, or derived from, any proceeds which the person has ob-

tained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

**5.** This provision provides:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

*States v. Schwimmer,* 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin,* 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank,* 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir.1987).

■ A motion to dismiss under Fed. R.Civ. P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court accepts well-pleaded facts as true and construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications,* 16 F.3d 1271, 1275 (D.C.Cir.1994).

■ Section 1963(*l*)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of General Creditors),* 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed.*

*Credit Union v. Penn Square Bank,* 879 F.2d 754 (10th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v, F.D.I.C.,* 572 F.2d 1361 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

■ The critical inquiry in an L–Claim proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla,* 46 F.3d at 1191; *In re Petition of Pacific Bank,* 956 F.Supp. at 10; *see also Schwimmer,* 968 F.2d at 1581; *Campos,* 859 F.2d at 1240; *United States v. Reckmeyer,* 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean,* 649 F.Supp. at 828. Because a general creditor is unable to assert an *interest* in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla,* 46 F.3d at 1191; *see Reckmeyer,* 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest ... forfeitures."). Accordingly, absent a showing of an interest in a specific asset, the petitioners would lack standing to assert a claim in these L–Claim proceedings.

■ Examined in light of Article 4–A of the New York Uniform Commercial Code ("N.Y.U.C.C."), which provides the rule of decision governing this wire transfer, the motions to dismiss must be denied. In Ahmed's transaction, he was both the originator and the beneficiary, because he was transferring funds between two accounts that he owned in different banks. N.Y.U.C.C. §§ 4–A–103(1)(b), 4–A–104(3) & Official Comment 3. As the last bank in the chain of banks identified in the payment order and the bank which was directed to pay Ahmed

as beneficiary, BCCI (Dubai) was the beneficiary bank. *Id.* §§ 4–A103(c); *see* 6B Hawkland, Uniform Commercial Code Series § 4A–103:03, at 33 (1993 & Cum.Supp.1996) (beneficiary bank "must be the final bank in the chain of banks receiving the payment orders forming the funds transfers"). *See generally* Fry, *Basic Concepts in Article 4A: Scope and Definitions,* 45 Bus.Law. 1401, 1413 (1990). CBK's transaction is no different: the payment order expressly identifies Fatema Taher as the beneficiary; therefore, BCCI (Dubai), albeit not so intended, was the beneficiary bank.

■ Acceptance within the meaning of Article 4–A is the key, because title to funds in a wire transfer passes upon acceptance of a payment order. *See, e.g., In re Petition of Pacific Bank,* 956 F.Supp. at 11; *Shawmut Worcester County Bank v. First American Bank & Trust,* 731 F.Supp. 57, 60 (D.Mass. 1990). Under Article 4–A, a funds transfer is complete when the beneficiary's bank accepts the payment order. N.Y.U.C.C. § 4–A–104(1). Such acceptance occurs, subject to certain conditions not relevant here, at the earliest of (1) when the bank pays the beneficiary or notifies the beneficiary of receipt of the order or that the account has been credited; (2) when the bank receives payment of the entire amount of the transfers; or (3) the beginning of the bank's next funds-transfer business day. *Id.* § 4–A–209(2); *see* Ballen & Diana, *Duties of the Beneficiary Bank,* 45 Bus.Law. 1467, 1468 (1990). Because an accepted transfer cannot be revoked without the consent of the beneficiary, *Middle East Banking Co. v. State Street Bank Int'l,* 821 F.2d 897, 901–02 (2nd Cir.1987), and the beneficiary bank incurs an obligation to the beneficiary upon acceptance of the funds, *id.* § 4–A–404, the ownership interest in those funds must pass from the originator upon completion of the funds transfer, *See Shawmut Worcester County Bank,* 731 F.Supp. at 60.

However, there are important exceptions to the rules regarding acceptance under Section 4–A–209. First, "[a]cceptance does not occur under paragraph (b) or (c) of subsection (2) [of § 4–A–209] if the beneficiary of the payment order does not have an account with the receiving bank." N.Y.U.C.C. § 4–A–209(3). Second, "if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent . . . account, no person has rights as a beneficiary of the order and acceptance cannot occur." *Id.* § 4–A–207(1).

Ahmed alleges, and the Court assumes true, that he did not have an account with BCCI (Dubai), which was identified as the beneficiary's bank in the payment order.[6] While CBK's L–Claim does not state that Fatema Taher did not have an account with BCCI (Dubai), such an inference is a reasonable one at this stage of the proceeding. (Of course, if BCCI (Dubai) held such an account, it would have acquired title to the funds upon receiving payment from BNY.) Accepting *arguendo* that the petitioners (beneficiaries in these transactions) had no accounts with BCCI (Dubai), the exceptions to the general rule control. Even if BCCI (Dubai) received the payments from correspondent BNY, absent accounts of the beneficiaries, the payments could not have been accepted by the beneficiary bank. N.Y.U.C.C. §§ 4–A–209(3), 4–A–207(1). Since they could not have been accepted, title did not convey to BCCI, and the petitioners have identified legal interests sufficient to survive the government's motions to dismiss.[7]

The authority upon which the government relies is inapposite. While *U.S. v. BCCI Holdings (Luxembourg), S.A., (In re Mistaken Wire Transfers),* 1994 WL 914460 (D.D.C., Oct. 22, 1994) does hold that improper acquisition of title to funds can be effected through the errors in the petitioners' payment orders, those cases involved situations where BCCI lawfully (albeit improperly) ac-

**6.** The government's argument that BNY was the beneficiary bank for beneficiary BCCI is unpersuasive. The payment order read, in light of the definitions in the N.Y.U.C.C., makes clear that BCCI (Dubai) was the last bank in the chain and received an instruction to pay Ahmed—who was both the originator and beneficiary of the transaction. BNY's role was that of an intermediary bank. *See* N.Y.U.C.C. § 4–A–104(2).

**7.** It is unnecessary for the Court to reach Ahmed's argument based on N.Y.U.C.C. § 210(3).

quired title under Article 4–A. The wire transfers in those cases were completed, and the funds were accepted pursuant to Section 4–A–209. Here, the facts appear to be substantially different, and the exceptions to Section 4–A–209(2) command a different result.[8] At this stage, the facts do not appear to be materially different than those involving the petition of UBAF Bank Limited, in which the Court amended the Order of Forfeiture, granting the petitioner's claim based on the authority of Section 4–A–207(1). *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of UBAF Bank Limited)*, slip. op. at 15–17 (D.D.C., Aug. 22, 1995).

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that the United States' motion to dismiss is denied; and it is

**FURTHER ORDERED** that the United States shall file its Answers to these petitions on or before **September 15, 1997**; and the parties shall meet and confer, filing their Joint Statements under Local Rule 206 on or before **October 6, 1997.**

IT IS SO ORDERED.

---

8. Moreover, several of the claims in that case involved "cover" transactions where BCCI was construed to be the beneficiary. The petitioners pleadings here, assumed true, contain not a whisper of such a transaction.