**MUWEKMA TRIBE, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior; and Kevin Gover, Assistant Secretary for Indian Affairs, United States Department of the Interior, Defendants.**

**No. 99–3261 (RMU).**

United States District Court, District of Columbia.

June 30, 2000.

Harry Rubenstein Sachse, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for Muwekma Tribe.

Renita Ford, U.S. Department of Justice, Environment & Natural Resources, Division, Washington, DC, for Bruce Babbitt.

Renita Ford, U.S. Department of Justice, Environment & Natural Resources, Division, Washington, DC, Robert Elijah Jordan, III, Steptoe & Johnson, L.L.P., Washington, DC, for Kevin Gover.

## MEMORANDUM OPINION

URBINA, District Judge.

**Granting in Part the Plaintiff's Motion for Summary Judgment; Denying Defendants' Motion to Dismiss, or in the Alternative, for Summary.**

## I. INTRODUCTION

This matter comes before the court upon the plaintiff's motion for summary judg-ment and the defendants' motion to dismiss, or in the alternative, for summary judgment. The plaintiff requests that the court issue a writ of mandamus or other remedy available under the Administrative Procedure Act ("APA"), compelling the Department of the Interior ("DOI") to complete within twelve months its review of the plaintiff's petition for acknowledgment as a federally recognized Indian tribe ("petition"). The defendants have filed a cross-motion to dismiss the complaint, or in the alternative, for summary judgment, based on lack of subject-matter jurisdiction. For the reasons which follow, the court denies the defendants' motion to dismiss and grants in part the plaintiff's motion for summary judgment.

## II. BACKGROUND

The plaintiff Muwekma Tribe is a tribe of Indians indigenous to the present-day San Francisco Bay area. Compl. ¶ 2. Defendant Bruce Babbitt is the Secretary of the Interior and defendant Kevin Gover is the DOI's Assistant Secretary for Indian Affairs. As officers of the United States, both defendants have been named as parties to this suit in their official capacities. The plaintiff brings this action asserting that Bureau of Indian Affairs ("BIA") has unreasonably delayed addressing its petition for acknowledgment in violation of APA § 706(1).

The plaintiff is not currently on the list of federally recognized tribes published annually by the BIA. Compl. ¶ 2. Recognition by the United States "is a prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes." 25 C.F.R. § 83.2. In addition, obtaining federal recognition "mean[s] that the tribe is entitled to the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States . . . ." *Id.* For these

reasons, among others, the plaintiff seeks the status of a federally recognized Indian tribe.

The procedures by which Indian tribes not presently acknowledged can petition the Secretary of Interior for recognition are set forth at 25 C.F.R. § 83 *et. seq.* Compl. ¶ 10. These procedures require the tribe seeking recognition to file a detailed description of the tribe's history. *See* 25 C.F.R. § 83.7. If a petitioner can demonstrate previous federal recognition, it need only demonstrate continued tribal existence since the time of prior federal acknowledgment. *See* 25 C.F.R. § 83.3(g).

On May 9, 1989, the plaintiff forwarded a letter of intent to file a petition for acknowledgment with BIA's Branch of Acknowledgment and Research ("BAR"). *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Mot. for Summ. J.") at 8. After retaining appropriate experts and conducting the requisite research, the plaintiff filed with BAR a petition for acknowledgment pursuant to 25 C.F.R. § 83 on January 24, 1995. Compl. ¶ 11. On April 6, 1995, after reviewing the plaintiff's submission, BAR forwarded a letter to the plaintiff further suggesting what was needed to convert their "preliminary effort into a fully documented petition." *See* Fleming Decl. dated Feb. 22, 2000, Ex. 6 at 1. Reasoning that the plaintiffs had not yet submitted a complete petition, BAR made clear that its letter should "not be considered as the formal technical assistance review of a documented petition which is required by the acknowledgment regulations (25 C.F.R. § 83.10(b)(2))." *Id.* at 1. The BAR's April 6, 1995 letter also thanked the plaintiff for their "very informative" petition, and remarked that "your petition is well on its way to completion." *Id.*

The plaintiff responded to BAR's suggestions by submitting additional informa-

tion on July 10, 1995 and August 15, 1995. *See* Mot. for Summ. J. at 8. The plaintiff then sought from BAR a ruling that the DOI had previously acknowledged the existence of the Muwekma Tribe. *Id.* By letter dated August 25, 1995, BAR promised to respond to this request by "the end of October." Fleming Decl., Ex. 9. BAR, however, did not respond until May 24, 1996, when it determined that the Muwekma Tribe had indeed been previously recognized as the Pleasanton or Verona Band.[1]

On July 29, 1996, the plaintiff met with BAR staff, Congresswoman Zoe Lofgren and others to discuss the outstanding petition. Fleming Decl. ¶¶ 22–23. At this meeting, the plaintiff submitted additional information in support of its petition. *See* Mot. for Summ. J. at 9. On September 9, 1996, the plaintiff wrote Ada Deer, Assistant Secretary for the DOI, to relay that "much of the information" requested by BAR had been provided, yet the petition had not yet been "read or critically reviewed." *Id.* On October 4, 1996, the plaintiff again wrote to Ms. Deer, this time requesting a meeting to establish "clear and concise time tables and responses to Muwekma's petition." Fleming Decl., Ex. 15.

On October 10, 1996, BAR sent the plaintiff a formal "technical assistance letter," advising the plaintiff of deficiencies in its petition and requesting additional information. Compl. ¶ 11. By this time, approximately 385 days had passed since the plaintiff made its initial submission and 139 days had passed since previous recognition had been established. *See* Mot. for Summ. J. at 10. On March 26, 1997, in response to BAR's "technical assistance letter," the plaintiff submitted additional information. On June 10, 1997, the plaintiff requested a second technical assistance

---

1. According to the plaintiff, the Act of May 18, 1928 authorized the Secretary of Interior to bring an action in the U.S. Claims Court on behalf of the "Indians of California" and to administer and distribute judgment funds es-

tablished as a result of the claims litigation. Compl. ¶ 8 (quoting 25 U.S.C. §§ 657–659). Defendants do not dispute that the 1928 Act did such.

letter, which BAR issued on June 30, 1997. By this second technical assistance letter, BAR further advised the plaintiff of deficiencies in its petition and requested additional information. Compl. ¶ 11. The plaintiff submitted this second set of additional information on January 16, 1998. *See* Fleming Decl., Ex. 23.

On February 20, 1998, the plaintiff submitted a letter to BAR requesting that the petition be put on the "ready, waiting and active list." Fleming Decl., Ex. 24. On March 26, 1998, DOI notified the plaintiff that "[t]he Bureau of Indian Affairs (BIA) is placing the Muwekma petition on the ready for active consideration list on March 26, 1998. The petition will be evaluated in turn, after the petition of the Southern Sierra Miwok Nation." Fleming Decl. ¶ 36.

After requesting placement on the active consideration list, the plaintiff submitted additional documentation in support of its petition on June 2, 1998. In a June 19, 1999 letter to Congresswoman Lofgren, which discussed the status of the plaintiff's petition, defendant Gover relayed that *ten* tribes were ahead of the plaintiff on the "ready" list and fifteen tribes were under "active consideration." *See* Fleming Decl., Ex. 15. Defendant Gover also relayed that "it may take two to four years before the petition will be reviewed." *Id.* Based on these facts, the plaintiff asserts that defendants have unreasonably delayed review of their petition. For the reasons which follow, the court agrees with the plaintiff.

## III. LEGAL STANDARD

### A. Motion to Dismiss

A party moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) has the burden of proving that the nonmovant has failed to state a claim upon which relief can be granted. To prevail, the movant must show "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,*

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). For purposes of determining whether a complaint states a cause of action upon which relief can be granted, the averments in the complaint are taken as true, and the plaintiff is given the benefit of any doubts and of all reasonable inferences that can be drawn from the facts alleged. *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir. 1994); *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir.1985). The court is not required, however, to accept inferences unsupported by the facts alleged, nor need it accept legal conclusions that are cast as factual allegations. *See Kowal,* 16 F.3d at 1276; *United States v. BCCI Holdings,* 980 F.Supp. 21, 26 (D.D.C.1997). Bare conclusions of law and sweeping, unwarranted averments of fact need not be accepted. *See Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987).

### B. Jurisdiction Under the Administrative Procedure Act

The APA requires agencies to "proceed to conclude a matter presented to it ... within a reasonable time." 5 U.S.C. § 555(b). It also confers upon the courts authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The defendants assert that a claim alleging "unlawfully withheld" agency action is appropriate only where Congress has established a duty to take action by a specific date. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") at 17. The defendants further assert that the court may not compel action in this matter since agency action has not been "unreasonably delayed" within the meaning of the APA. *Id.* The plaintiff, on the other hand, urges this court to take action by assessing the agency delay and finding it unreasonable. In so doing, the

plaintiff asserts, this court should issue a writ of mandamus or other order directing the defendant to complete review of the plaintiff's petition within the next twelve months. The court resolves the threshold question of jurisdiction favorably to the plaintiff based on the court's interpretation of the Administrative Procedure Act.

This court's review of authorities reveals that the question of allegedly unreasonable delay by an administrative agency is a matter uniquely within the province of the courts under the APA, provided that Congress has not established a preemptory statutory scheme. *But see Daedalus Enterprises, Inc. v. Baldrige,* 563 F.Supp. 1345, 1348 (D.D.C.1983) (holding that plaintiff's claim of unreasonable delay against Secretary of Commerce in reviewing license application did not arise under APA in light of detailed schedule set forth by Congress). In this case, no party has alleged the existence of a statutory scheme that trumps this court's APA jurisdiction.[2]

The defendants' administrative exhaustion and ripeness arguments are also unavailing. The APA specifically confers jurisdiction upon this court. Other courts similarly assessing the unreasonableness of agency delay have waived traditional requirements for the exhaustion of administrative remedies. *See Cockrum v. Califano,* 475 F.Supp. 1222, 1229 (D.D.C.1979) (quoting *Weinberger v. Salfi,* 422 U.S. 749, 755–56, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)) (waiver appropriate where "a claimant's interest in having the particular issue resolved promptly is so great that

deference to the agency's judgment is inappropriate."). Moreover, where delay of administrative remedy is at issue, the lack of a final order by the agency, which might otherwise engender a question about ripeness, does not preclude this court's jurisdiction. *See TRAC,* 750 F.2d at 75 (ripeness present when the very basis of plaintiff's complaint is lack of final order). Thus, the court is not persuaded that prudence, administrative exhaustion or ripeness should militate against the court's exercise of jurisdiction in this case.

Having found jurisdiction proper under the APA and, as discussed below, having determined that BIA has indeed acted with unreasonable delay, the court declines to review the parties' other jurisdictional arguments.[3] Because jurisdiction is proper under APA § 706(1), the court denies the defendants' motion to dismiss on jurisdictional grounds. The court now turns to consider the parties' arguments respecting unreasonable delay.

### C. Summary Judgment

The plaintiff's motion for summary judgment contends that there is no genuine dispute of material fact to preclude the court from concluding that the agency has acted with unreasonable delay as a matter of law. Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

2. The court's independent review further discloses that, in certain situations, exclusive review of an agency's decision is committed to the U.S. Court of Appeals by statute. *See Telecommunications Research and Action Center (TRAC) v. FCC,* 750 F.2d 70, 75 (D.C.Cir. 1984) (review of FCC action is statutorily committed to the Court of Appeals). The parties here, however, have made no such claim. In fact, the defendants concede that "there is no statutory obligation requiring the Court of Appeals to review the merits of this case." Defs.' Reply at 7. Thus, the court determines that it has jurisdiction to assess whether BIA

has unreasonably delayed processing of the plaintiff's petition in violation of the APA.

3. The parties disagree, for example, as to whether The All Writs Act, 28 U.S.C. § 1651(a), confers jurisdiction. *See* Mot. for Summ. J. at 15 (arguing that, under *TRAC,* the All Writs Act specifically authorizes courts to issue writs of mandamus); *cf.* Mot. to Dismiss at 13 (arguing that All Writs Act does not independently grant jurisdiction under *TRAC,* but rather "permits courts to issue writs in aid of jurisdiction acquired to grant some other form of relief.").

*See* FED. R. CIV. P. 56(c). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party is then required to designate "specific facts showing that there is a genuine issue for trial." *See id.* at 324, 106 S.Ct. 2548. "If the evidence in favor of the nonmoving party 'is merely colorable or is not significantly probative, summary judgment may be granted.'" *United States v. District of Columbia*, 44 F.Supp.2d 53, 56 (D.D.C.1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"[A] motion for summary judgment adequately underpinned is not defeated [by the nonmoving party] simply by a bare opinion or an unaided claim that a factual controversy persists." *See Alyeska Pipeline Service Co. v. EPA*, 856 F.2d 309, 313 (D.C.Cir.1988). If, however, "material facts are genuinely in issue, or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case," summary judgment should be denied. *See id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences therefrom in favor of the nonmoving party. *See id.* The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position." *See id.* at 252, 106 S.Ct. 2505. "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

## IV. ANALYSIS

### A. "Unreasonable Delay" Under the APA

The determinative issue in this case is whether the defendants have unreasonably delayed review of the plaintiff's petition under the Administrative Procedure Act.[4]

---

4. It is not clear whether the plaintiff intends to assert that BIA has "unlawfully withheld" action within the meaning of section 706(1). Section 706(1) provides relief only if the plaintiff can show that agency action has been withheld in violation of an express statutory duty to act. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C.Cir. 1981) (defining standard of review as "whether the agency has violated its statutory mandate by failing to act") (quoting *Association of American Railroads v. Costle*, 562 F.2d 1310, 1321 (D.C.Cir.1977)).

In the present case, it is clear that although there has been delay in reviewing the plaintiff's petition, the defendants have engaged in the review process, and have taken steps to advance that process, despite the lack of finality in the review process. Thus, to the extent

The APA requires agencies to "proceed to conclude a matter presented to it ... within a reasonable time." 5 U.S.C. § 555(b). Although there is no bright-line rule for determining whether delay by an agency rises to the level of unreasonableness, courts have developed factors for assessing the reasonableness of sometimes inevitable agency delay.

■ The Unites States Court of Appeals for the D.C. Circuit has established that courts must "consider the nature and extent of the interests prejudiced by the delay, the agency justification for the pace of the decision, and the context of the statutory scheme out of which the dispute arises." *See Public Citizen Health Research Group (PCHRG) v. Commissioner of Food and Drugs*, 740 F.2d 21, 35 (D.C.Cir.1984) (disapproved on other grounds by *TRAC v. FCC*, 750 F.2d 70 (D.C.Cir.1984)). The *PCHRG* factors were further developed by this Circuit in *TRAC v. FCC*, 750 F.2d 70 (D.C.Cir.1984). Specifically, the *TRAC* court augmented the law by formulating the following factors: (1) the agency's pace of decision must follow a "rule of reason"; (2) the agency's enabling statute may provide a timetable to give substance to this 'rule of reason'; (3) delays are less tolerable when human health and welfare are at stake than when commercial concerns are involved; (4) expediting delayed agency action should not adversely affect the agency's ability to act on · proceedings of a higher or competing priority; (5) the nature and extent of the interests prejudiced by delay should be considered; and (6) impropriety is not essential to a finding of unreasonable delay. *See TRAC*, 750 F.2d at 80.

■ Although *TRAC* involved an All Writs action, the APA standard was ap-

plied.[5] Thus, in determining whether the DOI has unreasonably delayed review of the Muwekma Tribe's petition for federal recognition, the court applies the *TRAC* factors.

**B. Application of *TRAC***

**1. First *TRAC* factor: the agency's pace of decision must follow a rule of reason**

Courts must consider the agency's justification for the pace of its decision. *See PCHRG*, 740 F.2d at 35. The pace at which the agency proceeds must follow a rule of reason. *Id.* In certain situations, administrative delays may be unavoidable; however, extensive or repeated delays are unacceptable and will not justify the pace of action. *See MCI v. FCC*, 627 F.2d 322 (D.C.Cir.1980) (finding four-year delay in proceeding leading to development of telephone rates was unreasonable). For the reasons discussed below, this court determines that the defendants fail to heed this first factor in that the BIA's decisions do not follow a rule of reason.

The plaintiff contends that its petition has been pending since May 1989, when it first filed its initial letter of intent with BIA, for a total of eleven years. The plaintiff argues that BAR had a duty to act beginning in 1995, when the petition was filed, and a duty to rule since March 1998, when the petition was placed on the "ready for active consideration" list. Mot. for Summ. J. at 23. The BAR informed the plaintiff that it had been placed on this list on March 26, 1998. Compl. ¶ 12. After careful review of the record, the court concludes that the petition has been pending since March of 1998, when it was placed on the list of tribes "ready for

---

that the plaintiff has moved for summary judgment on the basis of action unlawfully withheld, the court denies the plaintiff's motion.

5. In *TRAC*, the plaintiff brought an action alleging "unreasonable delay" by the FCC.

The *TRAC* plaintiff requested that the Court of Appeals issue a writ of mandamus to compel the FCC to expedite review of two matters. The Court of Appeals held that jurisdiction was proper under the All Writs Act and it applied the law of APA § 706(1).

active consideration." Since then, over two years have passed.

But the court's inquiry into reasonableness of delay does not end with ascertaining the amount of time elapsed since the plaintiff's petition was placed on the active consideration list. The plaintiff also points out, and the defendants have not disputed, that on June 19, 1999, defendant Gover indicated by letter to the Honorable Zoe Lofgren, that it would take two to four years from June 19, 1999 before the BAR would even begin consideration of the petition. *See* Fleming Decl., Ex. 27. Additionally, the plaintiff contends that the Muwekma Petition does not even appear on the defendants' list of determinations to be made by April 2002. *See* Mot. for Summ. J. at 23. However, the agency's two-to-four year estimate does not commit any form of agency action, but rather suggests that there is no clear end in sight to the processing of the plaintiff's petition.

This court abides by this Circuit's ruling which directed the court to "ascertain the length of time that has elapsed since the agency came under a duty to act, and … evaluate any prospect of early completion." *Cutler v. Hayes*, 818 F.2d 879, 897 (D.C.Cir.1987). In this case, the BIA came under a duty to act as of March 26, 1998. However, the defendants' refusal to provide the plaintiff with a definite time frame for review of its petition does not enable the court to evaluate any prospect of completion. Indeed, the record does not reflect that the defendants have any notion as to when they will complete the review process. This ambiguity defeats any assertion that the process proceeds with reasonable dispatch.

The court concludes that the ambiguous, indefinite time frame for review of the plaintiff's petition constitutes unreasonable delay within the meaning of APA § 706(1). The court does not intend by its ruling to suggest that four years is *per se* unreason-able in all cases. Rather, DOI's noncommittal estimate coupled with the specific history of interaction between these parties gives rise to a finding of "unreasonable delay" in *this* case. As the Court of Appeals has stated, "[t]here comes a point when relegating issues to proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all—and the result is a denial of justice." *See MCI v. FCC*, 627 F.2d at 344 (quoting *Nader v. FCC*, 520 F.2d 182, 206 (D.C.Cir.1975)). So in this case, the degree of ambiguity in defendant Gover's "two-to-four year" prediction is not acceptable.

The parties' submissions advance two other reasons for the court to find that the defendants do not follow a rule of reason. First, the plaintiff notes that DOI has in other cases recognized a tribe outside of the procedures set forth in 25 C.F.R. § 83. *See* Pl.'s Reply at 24 (quoting Fleming Decl., Ex. 28 ("Summary: Status of Acknowledgment Cases") at 4 (referring to cases where "status [was] clarified by other means" for Texas Band of Traditional Kickapoos and Ione Band of Miwok Indians)); *see also Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C.Cir.1997) (noting that Department did not follow 25 C.F.R. § 83 regulations in recognizing the Delaware Tribe). Second, the plaintiff contends that the Muwekma have been removed from the federal roster in violation of the Federally Recognized Tribe List Act ("Tribe List Act"), discussed briefly below.

In 1994, Congress enacted the Tribe List Act, requiring BIA to publish annually a list of tribal entities eligible for federal services and benefits.[6] See Pub.L. 103–454, § 104, 108 Stat. 4792 (1994) (codified at 25 U.S.C. § 479(a)-(b)).[7] The Tribe List Act prohibits the Secretary from removing or omitting tribes once placed on the list and underscores that Congress has the

---

6. Before the Tribe List Act, BIA since 1979 had published a list of eligible tribal entities approximately every three years. *See* 44 Fed. Reg. 7325.

7. The Tribe List Act requires the Secretary of the Interior to "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special

sole authority to terminate the relationship between a tribe and the United States. *See* 25 U.S.C. § 479(a). According to the plaintiff, the Muwekma's ancestors and, consequently, the Muwekma, have been excluded from the federal roster in violation of the Tribe List Act.[8]

According to the plaintiff, their Pleasanton and Verona ancestors were once included on a "roll" of all Indians entitled to receive the benefits available under the Act of May 18, 1928. *See* Cambra Decl. dated March 12, 2000 ¶ 8. However, the Muwekma's ancestors do not appear on recently published lists. The plaintiff adds that Congress never enacted legislation terminating the federal relationship with the Pleasanton or Verona Band. Moreover, "historical research turned up no evidence of a formal decision made by the Bureau to cease recognizing the tribe, or that the tribe was ever consulted by the Bureau in this regard." *See* Cambra Decl. ¶ 6. Thus, argues the plaintiff, the Muwekma have been dropped from the "roll" in violation of the Tribe List Act.

For reasons such as these, the plaintiff declares that DOI is "under special obligation to avoid delays and promptly resolve the Tribe's petition." *See* Mot. for Summ. J. at 15.[9] The defendants counter that these questions relating to exceptions made for other tribes and violations of the Tribe List Act encroach upon the merits of this controversy. Specifically, defendants state: "[t]he determination whether [the plaintiff's] documents adequately support the conclusion that [it was] federally recognized ... or whether *other factors* support federal recognition should be made in the

first instance by the Department of the Interior since Congress has specifically authorized the Executive Branch to prescribe regulations concerning Indian affairs and relations." *See* Defs.' Reply at 9 (quoting *James v. HHS,* 824 F.2d 1132, 1137 (D.C.Cir.1987)).

These issues may indeed be properly addressed in the first instance to DOI. At this time, however, they are relevant to this court's consideration insofar as they suggest to the court the need for flexibility when fashioning an appropriate time frame for resolution of the plaintiff's petition. Indeed, "other factors" not previously considered by the defendants may weigh in DOI's consideration on remand.

**2. Second TRAC factor: the agency's enabling statute may provide a timetable to give substance to this rule of reason**

If a specific deadline for final agency action is provided by Congress, the reasonableness of the delay can be measured in relation to this deadline. *See In re Center for Auto Safety,* 793 F.2d 1346, 1353 (D.C.Cir.1986) (finding DOI's delay unreasonable in light of repeated violation of statutory timetables). Accordingly, if the DOI's enabling statute declares a specific deadline for agency action, the reasonableness of the delay should be measured in relation to this deadline. *See PCHRG,* 740 F.2d at 35 (court must consider context of statutory scheme under which dispute arises). The parties, however, have not proffered a clearly defined preemptory requirement in DOI's statute, regulations or guidelines that would require DOI to con-

programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 479(a).

8. The plaintiff argues that Congress enacted the Tribe List Act in part because BIA was exceeding its authority under federal law by attempting to "administratively terminate previously recognized tribes." *See* Pl.'s Reply at 15.

9. The plaintiff further asserts that allowing the defendants to continually delay review of

their petition will "frustrate Congress' goal" of preventing removal or omission of tribes from the list. *See* Pl.'s Reply at 16. Thus, the plaintiff urges the court to factor in its consideration that BIA has been riddled with questions that concern the handling of Indian petitions, as evinced by the enactment of the Tribe List Act. *See also Cobell v. Babbitt,* 37 F.Supp.2d 6 (D.D.C.1999) (finding DOI responsible for mishandling individual Indian money trust accounts).

duct its review of a petition within any predetermined time frame.

The defendants argue that the absence of a preemptory time requirement for review indicates a Congressional intent to afford DOI an "open time frame" in light of the "limited amount of resources allotted for the processing of petitions and the tedious nature of the reviewing process . . . ." Mot. to Dismiss at 14. In support of this theory, the defendants assert that an open-ended time frame affords certain advantages, including the ability to conduct preliminary reviews of petitions to inform petitioners of deficiencies or omissions in their petitions. *Id.* As an example, the defendants assert that the open-ended time frame allowed BAR to bring "numerous deficiencies and omissions to the plaintiff's attention," thereby giving the plaintiff an opportunity to supplement its petition "at least eight times over a twenty-nine month period . . . ." *Id.*

The defendants' observations, though superficially reasonable, are self-defeating. The fact that the plaintiffs supplemented their petition at least eight times could equally suggest that BAR directives were not clear or beneficial to the plaintiff. The court could reasonably infer from the history and posture of this case that an open-ended time frame would not serve the ends suggested by the defendants. More importantly, notwithstanding the defendants' arguments, this court does not believe, and the defendants do not suggest, that Congress intended petitions to languish in the review process indefinitely. Yet such is the case that brings these parties before this court. Thus, the second TRAC factor weighs in favor of finding unreasonable delay.

**3. Third and Fifth TRAC Factors: delays are less tolerable when human health and welfare are at stake than when commercial concerns are involved; the nature and extent of the interests prejudiced by delay should be considered**

This court will consider the third and fifth factors together owing to their similarity. The plaintiff argues that the DOI's unreasonable delay has threatened the Muwekma Tribe's human welfare. *See* Mot. for Summ. J. at 29. The defendant contends that the plaintiff is purely motivated by economic interests in their pursuit of mandamus. *See* Mot. to Dismiss at 18. The plaintiff asserts that federal recognition is vital for the tribe and its members in that it "is a prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes." Mot. for Summ. J. at 29 (citing 25 C.F.R. § 83.2). Specifically, the plaintiff urges persuasively that lack of federal recognition denies members of the Muwekma Tribe access to federal programs implemented in an effort to improve the health and welfare of federally recognized tribes, including educational programs, health services and facilities, and safe water supply and water disposal systems for Indian homes and communities. *See* Mot. for Summ. J. at 30.

As mentioned, the defendants would have this court find that mere economic interests are at stake so as to justify their delay. They point out that, "[d]elays that are altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake." *Public Citizen Health Research Group v. Auchter,* 702 F.2d 1150, 1157 (D.C.Cir.1983). This court's review of the record leads to the conclusion, however, that the defendant's assertion of *pure* economic motive is unsubstantiated. Instead, the record discloses a nexus between human welfare and "economic" considerations which weighs in favor of compelling agency action based on unreasonable delay. Indeed, this Circuit has found unreasonable agency delay where agency action would hasten financial jeopardy in a case where the line between human welfare and economic interest was much clearer. *See Air Line Pilots Association v. CAB,* 750 F.2d 81 (D.C.Cir.1984)

(finding delay which placed plaintiffs in serious financial jeopardy was unreasonable). Thus, the court finds that the third and fifth TRAC factors weigh in favor of finding unreasonable delay by the agency.

### 4. Fourth TRAC Factor: expediting delayed agency action should not adversely affect the agency's ability to act on proceedings of a higher or competing priority

As to the fourth factor, courts must consider the possible effects of a plaintiff's request for relief on the BIA's "activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. If, for example, an order compelling agency action will serve only to delay other important BIA matters, then the delay in question may be considered reasonable. *See FEC v. Rose*, 806 F.2d 1081, 1091 (D.C.Cir.1986) (finding delay reasonable in part because order compelling action would only delay other pending matters before FEC). In this case, however, the record is not clear on the nature, priority or hierarchy of competing interests.

Title 25 C.F.R. § 83.10(d) provides that "[t]he order of consideration of documented petitions shall be determined by the date of the Bureau's notification to the petitioner that it considers that the documented petition is ready to be placed on active consideration." 25 CFR § 83.10(d). As a preliminary matter, the court infers that the agency's list, which assigns plaintiff's petition tenth priority after the Sierra Miwok, is based on "notification" as intended by the Code of Federal Regulations. Thus, assuming that the plaintiff is indeed the eleventh applicant on the ready/active list, prior petitioners may have priority.

It appears, however, that the continual correspondence between the plaintiff and BAR may have generated confusion. At an earlier time, the DOI represented to the plaintiff that, "your petition is well on

its way to completion." *See* Fleming Decl., Ex. 6 at 1. It further appears that the plaintiff may have misapprehended the benefits associated with previous acknowledgment. Moreover, the Muwekma may have intended the October 4, 1996 letter requesting a meeting with Ada Deer to set up "clear and concise time tables" for review of the petition to serve as its request to be put on this list. Nonetheless, the record reflects, and the plaintiff concedes, that the Muwekma Tribe did not make an explicit, official written request to be put on the "ready, waiting for active consideration" list until February 20, 1998. *See* Mot. for Summ. J. at 10. Confusion aside, on this record it is unclear whether the plaintiff's status as a previously recognized tribe had any effect on its priority on the ready/active list.

Because there is an express requirement that a request be in writing, the court will in fairness to the defendants assume *arguendo* that other petitioners properly have priority over the plaintiff. Nonetheless, this Circuit has determined that extensive or repeated delays are unacceptable notwithstanding competing interests. *See MCI Telecommunications*, 627 F.2d at 340 (finding four-year delay unreasonable). According to undisputed calculations provided by the plaintiff, the Bureau considers an average of 1.3 petitions per year. Compl. ¶ 6. The plaintiff estimates that, with twenty-six tribes ahead of them, it will be twenty years before BIA completes its review of the petition. *Id.* The defendants merely respond by alluding to the February 2000 revisions to the applicable regulations, 25 CFR § 83.[10] The revisions, however, have nothing to do with the protracted delay that currently exists. Although BIA's resources may in fact be limited, the record does not support the notion that resources are being dispatched in a manner consistent with mitigating unreasonable delay. Thus in the present case, BIA is besieged by a slow rate of

---

**10.** These revisions eliminate BIA's responsibility to provide supplemental research and lengthy technical assistance letters. *See* Mot. to Dismiss at 6–8.

processing petitions which may fairly be characterized as extensive and unacceptable.

The defendants further argue that expediting the requested action will detrimentally affect higher or competing priorities of the BIA. *See* Defs.' Reply ¶ 3. Specifically, the defendants protest that because all petitions awaiting review by the BIA involve the same health and human welfare concerns as the plaintiff's, the plaintiff's claim that its health and welfare are at stake should not trump the claims of other petitioners. *Id.* Conversely, the plaintiffs argue that granting the relief requested does not impact the BIA's activities of a higher or competing priority, but rather assists other petitioners by "increas[ing] the rate at which the Bureau processes all petitions" and by sending a needed signal to the Department of the Interior that "it must get its job done" and that "it cannot be satisfied with concluding one or two petitions a year." Mot. for Summ. J. at 32. The court agrees that directing the defendant to complete a review of the plaintiff's petition within twelve months may hasten review at the undue expense of other tribes. Moreover, compelling the agency to assign the plaintiff top priority may produce an inequitable result. However, this court concludes that the defendants' extensive delay in processing the plaintiff's petition is unjustifiable and without good reason. For these reasons, the court declines to impose upon parties a "hard deadline," but in the interest of fairness directs the agency to submit by July 28, 2000 a proposed schedule for resolving the plaintiff's petition. Such a timetable should reflect consideration of this court's view that this matter implicates health and human welfare issues requiring reasonably *prompt* attention.

### 5. Sixth TRAC Factor: impropriety is not essential to a finding of unreasonable delay

In *PCHRG v. Commissioner of Food and Drug,* this Circuit stated that "the District Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *PCHRG,* 740 F.2d at 34. While the record does not disclose a hint of impropriety, the court's review of the remaining factors supports the determination that DOI acted and continues to act with unreasonable delay.

Thus, based upon the pleadings, submissions and applicable law, the court concludes that DOI has acted in violation of APA § 706(1) and unreasonably delayed processing of the Muwekma Tribe's petition. Having so determined, the court turns to consider remedies available under the APA.

### V. REMEDY

The plaintiff requests an order compelling review of its petition in twelve months. However, this court may address unreasonable delay by means less intrusive than mandamus.[11] The court thus directs the agency to submit to the court by July 28, 2000 a proposed schedule for resolving the plaintiff's petition. The court does not, by its ruling, intend to mandate that the agency act within a prescribed time frame at this point. However, a deadline is in order and the agency is directed to propose one consistent with this opinion and APA § 706(1).

---

11. *See* Carol R. Miaskoff, Note, *Judicial Review of Agency Delay and Inaction Under Section 706(1) of The Administrative Procedure Act,* 55 Geo. Wash. L.Rev. 635, 656 (1987) ("Although section 706(1) and All Writs mandamus are virtually coextensive for purposes of defining unreasonable delay, the APA provides the more flexible remedy. Mandamus provides appropriate relief under the All Writs Act, but courts have generally been unwilling to use the writ in this context. Instead, courts have fashioned equitable remedies under section 706(1).") (citing *In re Center for Auto Safety,* 793 F.2d 1346 (D.C.Cir.1986)); *United Steelworkers of Am. v. Rubber Mfrs. Ass'n,* 783 F.2d 1117 (D.C.Cir.1986); *TRAC,* 750 F.2d at 80)).

## VI. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is denied, and the plaintiff's motion for summary judgment is granted in part. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued on this 30th day of June, 2000.