**THE MASHPEE WAMPANOAG TRIBAL COUNCIL, INC.,**
Plaintiff,

v.

**Gale A. NORTON, Secretary, U.S. Department of Interior, et al., Defendants.**

No. 01–0111 (JR).

United States District Court, District of Columbia.

Dec. 21, 2001.

Robert E. Jordan III, John J. Duffy, Steptoe & Johnson LLP, Washington, DC, Counsel for Plaintiff.

Silvia Sepulveda–Hambor, U.S. Department of Justice, Environment & Natural, Resources Division, General Litigation Section, Washington, DC, Counsel for Defendants.

## *MEMORANDUM*

ROBERTSON, District Judge.

The Mashpee Wampanaog Tribal Council, whose petition for recognition as a tribe was completed nearly six years ago, complains of unreasonable delay by the Bureau of Indian Affairs in issuing a decision. The parties have filed cross-motions for summary judgment. For the reasons set forth below, an order compelling agency action will be issued pursuant to 5 U.S.C. § 706(1).

### *Background*

The Mashpee are Indians who live on Cape Cod, Massachusetts. Compl. ¶ 5. They aver, *inter alia*, that Captain John Smith first encountered their ancestors while exploring the coast of Cape Cod in 1614, *id.;* that, in 1870, the Commonwealth of Massachusetts reorganized Mashpee tribal lands into the town of Mashpee, which until the 1970s was controlled by the tribe, *id.* ¶ 8; and that currently the tribe has approximately 1,500 members, three-quarters of whom reside in or around the town of Mashpee. Pl.'s Mem. at 13. Defendants are the Secretary of the Department of the Interior and the Assistant Secretary for Indian Affairs, who heads the Bureau of Indian Affairs (BIA). The Branch of Acknowledgment and Research (BAR) is the entity within BIA responsible for processing petitions for acknowledgment.

The Mashpee seek federal recognition as a tribe. Federal recognition "is a prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes" and "mean[s] that the tribe is entitled to the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations, and obligations of such tribes." 25 C.F.R. § 83.2.

The authority to determine the eligibility of tribes for federal recognition is assigned to BIA. 25 U.S.C. §§ 2, 9. BIA's regulations establishing procedures for the recognition of tribes were issued in 1978. 25 C.F.R. Pt. 83. An unrecognized tribe first files a letter of intent. *Id.* § 83.4. The tribe then submits a petition for federal acknowledgment demonstrating that it meets seven criteria. *Id.* §§ 83.6–83.7. BIA then conducts a preliminary review of the petition in order to provide the petitioner with "technical assistance" and "an opportunity to supplement or revise the documented petition prior to active consideration." *Id.* § 83.10(b). BIA advises the petitioner of any "obvious deficiencies" in the petition and allows the petitioner to withdraw the petition or submit additional information. *Id.* After these steps are completed, the petition is accepted as "ready for active consideration." *Id.* at § 83.10(d). When BIA places a petition on the "ready for active consideration" list, it notifies the petitioner and assigns the petition priority on a first-come, first-served basis. *Id.* A petition is eventually moved to "active" consideration. *Id.* § 83.10(g). Within one year of notifying the petitioner that active consideration has begun (unless BIA determines that a 180–day extension is warranted), BIA must publish a notice of its proposed finding in the Federal Reg-

ister. 25 C.F.R. § 83.10(h). There follows a comment period and a procedure for requesting reconsideration. *Id.* §§ 83.10(i)-(*l* ), 83.11.

The Mashpee notified the Bureau of Indian Affairs of their intent to petition for federal recognition in 1975, three years before BIA adopted its regulations. Defs.' Mem. at 11. The tribe filed its formal letter of intent in 1980,[1] Pl.'s Mem. at 13, and its petition for recognition in 1990, Defs.' Mem. at 11. About one year later, in July 1991, BIA responded with a letter of "obvious deficiency." *Id.* In January 1996, the tribe filed its response to the "obvious deficiency" letter. *Id.* at 13. In February 1996, BIA placed the tribe on the "ready for active consideration" list. *Id.* More than five years have passed since BIA placed the Mashpee's petition on the ready list, and it is now number three on that list. *Summary Status of Acknowledgment Cases* (November 16, 2001). Ahead of the Mashpee are two other petitions on the "ready" list and thirteen more under "active" consideration by BIA. *Id.*

According to BIA, "it is difficult or impossible to project a date certain for the final determination of the Plaintiff's acknowledgment petition." Defs.' Obj. to Pl.'s Stmt. of Mat. Facts at 16. A recent report by the Government Accounting Office, which analyzed problems with BIA's recognition process at the request of Congress, estimates that it will take fifteen years for all of the ready petitions to be resolved. U.S. General Accounting Office (GAO), *Improvements Needed in Tribal Recognition Process* at 10 (November 2001) (Pl.'s Ex. A to Opp'n). BIA admits that it takes too long to process petitions. *To Provide for Administrative Procedures to Extend Federal Recognition to Certain Indian Groups:* Hearing on S. 611 Before the Senate Committee on Indian Affairs, 106th Cong. 54 (2000) (statement of Kevin Gover, Asst. Secretary for Indian Affairs) (Pl.'s Ex. E).

### Analysis

#### A. Unreasonable Delay

The tribe alleges unreasonable delay by BIA in processing its acknowledgment petition. 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) ("The reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed."). To address that delay, the Mashpee seek a writ of mandamus or other order pursuant to § 706(1) that compels BIA "to conclude their consideration of the Mashpee Tribe's petition within twelve months of the date of the Court's order." 28 U.S.C. § 1361; 28 U.S.C. § 1651(a). The tribe also requests that I retain jurisdiction over the case until BIA has rendered a decision.

---

**1.** During the 1970s and 1980s, the tribe also filed lawsuits seeking federal recognition. In *Mashpee Tribe v. New Seabury Corp.,* the tribe sued a defendant class representing landowners in the town of Mashpee under the Indian Nonintercourse Act, 25 U.S.C. § 177. 592 F.2d 575 (1st Cir.1979). The First Circuit affirmed a jury verdict finding that the Mashpee were not a "tribe" as required for standing to bring suit under the Act and for protection by the Act. *Id.* In *Mashpee Tribe v. Secretary of the Interior,* the Mashpee, along with other tribes in southeastern Massachusetts, sought declaratory judgments confirming recognition of their tribes and acknowledging the tribes' "Indian title" to certain land in southeastern Massachusetts. 820 F.2d 480 (1st Cir.1987). The Mashpee again invoked the Indian Nonintercourse Act, 25 U.S.C. § 177. *Id.* at 482. The court found that the Mashpee's "effort to relitigate the tribe's claim is barred by elementary principles of res judicata." *Id.; see also Mashpee Tribe v. Watt,* 707 F.2d 23, 24 (1st Cir.1983) ("[T]his effort to relitigate the tribe's claim is barred by elementary principles of res judicata.").

■ "[C]onsideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network & Ocean Advocates*, 234 F.3d 1305, 1315 (D.C.Cir. 2000). In *TRAC v. FCC*, the D.C. Circuit "discern[ed] the hexagonal contours of a standard" for deciding when unreasonable agency delay is "so egregious as to warrant mandamus" under § 706(1) of the APA. 750 F.2d 70, 79–80 (D.C.Cir.1984); *see also In re Bluewater*, 234 F.3d at 1315. The *TRAC* factors are: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) any timetable or other indication of the speed with which Congress expects the agency to proceed; (3) whether economic regulation or human health and welfare is at stake; (4) the effect an expediting order would have on agency activities of a higher or competing priority; and (5) the nature and extent of the interests prejudiced by delay. The sixth side of the *TRAC* "hexagon" is actually a non-factor: The court need not find any impropriety "lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed.[2] *TRAC*, 750 F.2d at 80.

### B. *Application of TRAC Factors*

■ In a case virtually identical to this one, Judge Urbina recently applied the *TRAC* factors and found unreasonable delay in BIA's processing of a tribal petition. BIA had placed the Muwekma tribe's peti-

tion on the "ready" list in March 1998 (more than two years later than the Mashpee). *Muwekma Tribe v. Babbitt*, 133 F.Supp.2d 30, 33 (D.D.C.2000). The Muwekma sought an order compelling BIA to complete its review of plaintiff's petition within twelve months. *Id.* at 31. Finding that "this court may address unreasonable delay by means less intrusive than mandamus," Judge Urbina first ordered BIA to submit a proposed schedule for resolving plaintiff's petition. *Id.* at 41. BIA then submitted, and Judge Urbina signed, a schedule with no deadline for completion. 133 F.Supp.2d 42, 43 (D.D.C.2001). Judge Urbina later amended that order, however, to compel a final determination of the tribe's status by March 2002. The amended order also set deadlines for the various stages of the regulatory process. *Id.* at 51.[3] BIA did not appeal.

The Mashpee moved to intervene in *Muwekma* prior to Judge Urbina's amendment of his order, arguing that "[t]he Mashpee Tribe believes that its interests in federal acknowledgment as an Indian tribe may be impaired as a result of the remedy that the Court has granted and additional remedies the Court may grant in the future." Mashpee Mot. at 2 (Defs.' Ex. D). Judge Urbina denied the motion to intervene.[4] Ord. 9/5/00.

### Rule of Reason

■ "Although the issue of whether delay is unreasonable necessarily turns on the facts of each particular case, [the D.C. Circuit] has stated generally that a reason-

---

**2.** The Mashpee have not alleged agency impropriety. Pl.'s Mem. at 33.

**3.** Judge Urbina has since extended the deadlines, at plaintiff's motion. Ords. 10/25/01, 11/28/01.

**4.** Other cases in which federal district courts have recently ordered BIA to decide petitions for federal recognition within a judicially im-

posed deadline, or in which such relief is requested, include *United States v. 43.47 Acres of Land*, 45 F.Supp.2d 187, 189 (D.Conn. 1999); *Golden Hill Paugussett Tribe v. Norton* (No. 01–0724) (D.D.C.) (Mashpee moved to intervene; case transferred to federal district court in Connecticut); *Burt Lake Band of Ottawa & Chippewa Indians v. Norton*, (No. 01–0703) (D.D.C.).

able time for an agency decision could encompass months, occasionally a year or two, but not several years or a decade." *Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341, 359 (D.C.Cir.1987). The "court should ascertain the length of time that has elapsed since the agency came under a duty to act, and should evaluate any prospect of early completion." *Cutler v. Hayes*, 818 F.2d 879, 897 (D.C.Cir.1987). BIA came under a duty to act in February 1996—when it placed plaintiff's petition on the "ready" list. *Muwekma*, 133 F.Supp.2d at 36 (measuring the time of delay from the point at which BIA placed the tribe's petition on the "ready" list— approximately two years earlier).

BIA argues that the "rule of reason" is satisfied by its practice of reviewing petitions on a first-come, first-served basis. 25 C.F.R. § 83.10(d). The Court disagrees. The *process* may be reasonable, but the *TRAC* "rule of reason" is concerned with results. BIA's refusal or inability to set a deadline or even estimate when it will decide plaintiff's petition tips this first *TRAC* factor decidedly in the Mashpee's favor. *See Muwekma*, 133 F.Supp.2d at 37 ("[T]he defendants' refusal to provide the plaintiff with a definite time frame for review of its petition does not enable the court to evaluate any prospect of completion.").

### Statutory Timetable

The parties do not contend, and it does not appear, that Congress has established any timetable for the resolution of tribal petitions for acknowledgment. *Muwekma*, 133 F.Supp.2d at 38–39. In recent years, Congress has expressed concern about the slow pace of BIA's federal recognition process, *GAO Report* at 2, but has done nothing to remedy the situation.

Congressional inaction suggests, if not satisfaction, at least acceptance of the pace of BIA decisionmaking. This factor accordingly weighs in BIA's favor, although not enough, in my view, to let six years of inaction and an indefinite future conform to a "rule of reason."

### Nature and Extent of the Delay

The third and fifth *TRAC* factors, the nature of the delay and the prejudice resulting from delay, are analyzed together. *In re Barr Labs.*, 930 F.2d 72, 75 (D.C.Cir.1991). The Mashpee assert that the delay in processing their petition "directly affects the rights, health, and welfare of the Tribe and its members." Pl.'s Mem. at 27. BIA does not appear to dispute the Mashpee's assertion.[5] The "federal recognition of an Indian tribe can have a tremendous effect on the tribe, surrounding communities, and the nation as a whole. Recognized tribes and their members have almost exclusive access to about $4 billion in funding for health, education and other social programs provided by the federal government." GAO Report at 1. The third and fifth *TRAC* factors weigh in favor of the Mashpee.

### Effect on Agency Priorities

"[T]he court should give due consideration in the balance to any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources." *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C.Cir.1992) (internal citations omitted). "Assuming constant resources for the generic drug program, a judicial order putting Barr at the head of the

---

5. In *Muwekma,* on the other hand, BIA contended that the plaintiff was "purely motivated by economic interests in their pursuit of

mandamus." 133 F.Supp.2d at 39. Judge Urbina disagreed.

queue simply moves all others back one space and produces no net gain." *In re Barr Labs.*, 930 F.2d at 75. "Of course, these justifications become less persuasive as the delay progresses, and must always be balanced against the potential for harm." *Cutler,* 818 F.2d at 898.

This factor, of course, would normally weigh heavily in BIA's favor. Not only must BIA "juggle competing duties under the Acknowledgment Regulations and increasing collateral duties with relatively limited resources," Defs.' Mem. at 29, but "the injury claimed by Mashpee is applicable to all groups [petitioning for acknowledgment]." *Id.* at 30.

I found and announced in open court on December 7, 2001, that BIA's timetable (or lack of a timetable) for action on the Mashpee petition is unreasonable. Were it not for Judge Urbina's order in the *Muwekma* case and BIA's reaction to that order, however, application of the *TRAC* factors would nevertheless have dictated the denial of relief to the Mashpee in this case: Congress knows about the situation but has not yet taken definitive action to correct it, and BIA is plugging along with its limited resources, business as usual, doing the best it can.[6]

Judge Urbina's order moving the Muwekma to the head of the line and *BIA's apparent acquiescence in that order,* however, have altered the decisionmaking matrix. Tr. 12/7/01 at 52–53 (Defense counsel: "Muwekma was number 11.... Mashpee was number three.... Muwekma went right to the top of the line.") By failing to appeal from Judge Urbina's order, BIA essentially conceded that the otherwise dispositive fourth *TRAC* factor—the effect of expediting delayed action on agency activities of a higher or competing

priority—is of no weight at all. Since, of the remaining factors, the first, third and fifth all favor the Mashpee, an order compelling agency action will issue.

It is not the business of the judiciary to decide which tribe should stand where in relation to others in BIA's queue of petitioners, nor—except for deciding whether agency delay is "so egregious as to warrant mandamus"—is it for the courts to decide just how long it should take the BIA to act upon a petition. What can and will be done, in this case as in the *Muwekma* case, is simply to order BIA to decide the petition by a date certain.

One might reasonably now expect many of the other tribal petitioners to seek mandamus because of unreasonable delays in their own cases. If they do, Judge Urbina's order may ultimately succeed, not in breaking up the logjam at BIA, but only in reorganizing it. A more hopeful scenario, however, is that BIA will be moved by these two orders, or by an accumulation of them, to reallocate its resources, or streamline its decisionmaking process, or contract out some of the work that needs to be done on a petition for acknowledgment, or seek additional revenues from Congress for that task, or do any of the many other things that agencies can do when they must.

### ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, and Defendants' Opposition thereto, IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED; and it is

FURTHER ORDERED that the Bureau of Indian Affairs Branch of Acknowl-

---

**6.** Defendants note that "[f]rom the 95th to the 107th Congresses, approximately 23 bills have been introduced in Congress concerning the acknowledgment process." Defs.' Mem. at 38.

edgement and Research (BAR) place the Mashpee Petition for Recognition on active consideration immediately, and

FURTHER ORDERED that BAR publish a proposed finding in the Federal Register within six months of this order, and

FURTHER ORDERED that once the proposed finding is published, a three month response and public comment period begins pursuant to 25 C.F.R. § 83.10(i), and

FURTHER ORDERED that a final decision must be issued on the petition within twelve months of the issuance of this Order.

This Court will retain jurisdiction until a final determination on the petition is issued.

SO ORDERED.