# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

No. 02–5139          **September Term, 2002**

**01cv00111**

Filed On: August 1, 2003

THE MASHPEE WAMPANOAG TRIBAL COUNCIL, INC.,
APPELLEE

v.

GALE A. NORTON, SECRETARY,
UNITED STATES DEPARTMENT OF THE INTERIOR
AND NEAL A. MCCALEB, ASSISTANT SECRETARY FOR
INDIAN AFFAIRS,
UNITED STATES DEPARTMENT OF THE INTERIOR,
APPELLANTS

———

**BEFORE**: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

## O R D E R

It is **ORDERED**, by the court, that the opinion filed August 1, 2003, be amended as follows:

Page 11, delete the last sentence and insert in lieu thereof,

The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

*PER CURIAM*

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 21, 2003                    Decided August 1, 2003

No. 02-5139

THE MASHPEE WAMPANOAG TRIBAL COUNCIL, INC.,
APPELLEE

v.

GALE A. NORTON, SECRETARY,
UNITED STATES DEPARTMENT OF THE INTERIOR,
AND NEAL A. MCCALEB, ASSISTANT SECRETARY FOR
INDIAN AFFAIRS,
UNITED STATES DEPARTMENT OF THE INTERIOR,
APPELLANTS

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00111)

————

*Katherine J. Barton*, Attorney, U.S. Department of Justice, argued the cause for appellants. With her on the briefs were

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Elizabeth A. Peterson* and *Silvia Sepulveda–Hambor*, Attorneys, and *Scott Keep*, Attorney, U.S. Department of Interior.

*Robert E. Jordan III* argued the cause for appellee. With him on the brief was *Cynthia Taub*.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: This case involves a petition by Mashpee Wampanoag Tribal Council, Inc., for recognition by the United States as an Indian tribe. The Secretary of the Interior appeals an order of the district court finding the Bureau of Indian Affairs (BIA) unreasonably delayed acting upon the petition, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1), and requiring the Bureau to decide the matter within one year. Because we believe the district court misapplied the law of agency delay, we send the case back to the district court for further proceedings.

## I. Background

A federally-recognized American Indian tribe is entitled to significant privileges, including exemption from state and local jurisdiction — including laws regulating gambling — and the right of its members to participate in an array of welfare programs. Although the Congress has recognized tribes through legislation in recent years, it is ordinarily up to the Secretary of the Interior, through a painstaking bureaucratic process, to determine whether the United States will recognize the sovereignty of a putative tribe. *See generally* 25 C.F.R. Part 83.

Mashpee is a corporation that represents the interests of some 1,500 residents of Cape Cod, Massachusetts. Its quest for federal recognition began in the 1970s, when it first notified the BIA of its intent to seek recognition. It filed a formal letter of intent, however, only in 1980. *See* 25 C.F.R. § 83.4. Then, perhaps because it was distracted by its efforts to gain recognition through litigation, *see, e.g., Mashpee Tribe v. Sec'y of the Interior*, 820 F.2d 480, 482 (1st Cir. 1987)

(seeking recognition and title to certain lands pursuant to Indian Nonintercourse Act, 25 U.S.C. § 177), Mashpee did not file its petition with the BIA for another decade (in September 1990). After an initial review, the BIA's Branch of Acknowledgment and Recognition (BAR) in July 1991 sent Mashpee a "letter of obvious deficiency" requesting additional information. *See* 25 C.F.R. § 83.10(b). Mashpee took four and a half years to respond. Upon receipt of the response in January 1996, the BAR notified Mashpee that it was placing the petition on its list of applications "ready, waiting for active consideration."

The "ready" list is a queue, with priority established on a first-come basis. No statute or regulation specifies how quickly the queue must move along — in contrast to the timeframe for processing a petition once it is under active consideration, s*ee id.* §§ 83.10(h)-(*l* ) — and the pace is glacial. As of August 2001 there were 10 petitions on the list, six of which had been waiting there for at least five years. U.S. Gen. Accounting Office, Indian Issues: Improvements Needed in Tribal Recognition Process 15 (2001). The GAO estimated that it could take 15 years to resolve all the petitions then awaiting active consideration. *Id.* at 16.

Frustrated by that prospect, Mashpee sued the Secretary, claiming unreasonable delay in violation of the APA and seeking an order compelling the BIA to act upon the petition. The district court, after weighing the considerations relevant to such a claim, as summarized in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) (*TRAC*), granted summary judgment for Mashpee, ordered the BIA immediately to place Mashpee's petition on active consideration, and required the Secretary to issue a final decision within one year. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 180 F. Supp. 2d 130, 136–37 (D.D.C. 2001). The Secretary appeals.

## II.  Analysis

The Secretary disputes the district court's jurisdiction to hear Mashpee's claim of unreasonable delay, its conclusion

that the BIA had not acted upon Mashpee's petition within a reasonable time, and its order compelling the BIA to take a decision within one year. Before we consider those issues, however, we must consider Mashpee's claim that this appeal is untimely.

A. Timeliness

The Secretary filed a notice of appeal 55 days after the district court denied her motion for reconsideration of the summary judgment order. Ordinarily that would satisfy the appellate filing deadline. *See* Fed. R. App. P. 4(a)(4)(A)(iv) (60–day time period in which to file appeal runs from entry of order disposing of motion to alter or amend judgment). In this case, however, Mashpee argues the Secretary may not invoke the tolling provision of FRAP 4 because her motion for reconsideration was both untimely, *see* Fed. R. Civ. P. 59(e) (setting 10–day deadline), and defective in that it did not "state with particularity the grounds therefor," *see* Fed. R. Civ. P. 7(b)(1).

A motion under Rule 59(e) must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or "any other day appointed as a holiday by the President." Fed. R. Civ. P. 6(a). In this case, the district court granted summary judgment on December 21, 2001. The Secretary filed her motion on January 9, 2002. Excluding weekends, Christmas Day, and New Year's Day, that was 11 days after the court issued its order.

Whether the Secretary's motion for reconsideration was timely, therefore, depends upon whether Christmas Eve should also be excluded from the computation as a "day appointed as a holiday by the President." As the Secretary points out, President Bush directed that "all executive branch departments and agencies of the Federal Government shall be closed and their employees excused from duty" on December 24, 2001, with exceptions for national security. Exec. Order No. 13,238, 66 Fed. Reg. 63,903 (Dec. 5, 2001). The President's order also provided that December 24 would fall within the scope of various laws governing holiday pay and

leave for federal workers. *Id.* By virtue of the executive order, the Secretary maintains, Christmas Eve was a "day appointed as a holiday by the President."

We have not previously had occasion to consider whether a day has been "appointed as a holiday" within the meaning of Rule 6(a), and the parties have been unable to cite any particularly helpful authority, albeit not for want of trying. True, as Mashpee points out, the Seventh Circuit has suggested that for the President to declare a "holiday" he must use that word. *See Latham v. Dominick's Finer Foods*, 149 F.3d 673, 674 (1998). But the actual holding in that case was that the disputed motion was timely because the courthouse was closed on the day in question — as it was in this case. On the precise issue before us, whether a day on which the President closes the offices of the Executive Branch qualifies as a "legal holiday" under Rule 6(a), neither *Latham* nor any other case cited by the parties provides much guidance.

The purpose of the rule, however, is guidance enough. Rule 6 generally is intended to provide "reasonable flexibility concerning the measurement of time periods under the Federal Rules of Civil Procedure," 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1161 (3d ed. 2002); Rule 6(a) specifically is intended to alleviate the "hardship" of allowing days of rest to shorten already tight deadlines, Fed. R. Civ. P. 6 advisory committee's note. When the President gives all employees in the Executive Branch a day off, we believe Rule 6(a) contemplates a break for federal litigators. To penalize the Secretary (rather drastically, by dismissing her appeal) because the President did not use the word "holiday" in the executive order would quite plainly run counter to the purpose of the Rule. We conclude that Christmas Eve, 2001 should be excluded in calculating the 10–day period within which the Secretary had to file her motion; hence, the motion was timely.

We also find the Secretary's motion for reconsideration sufficiently particular to toll the deadline for filing an appeal. Because of the tolling function of certain motions, there is good reason to ensure they not be devoid of content, filed

only to stop the clock. Here, as Mashpee argues, the bulk of the Secretary's motion for reconsideration was dedicated to explaining why the Secretary needed another week to file her supporting memorandum.

The motion was not so devoid of detail, however, as to fall below the standard of specificity set by Rule 7, namely, that a motion shall "state with particularity the grounds therefor." The Secretary objected, on the ground that the issue was not briefed, to

> the Court's conclusion that "[b]y failing to appeal from Judge Urbina's order [in another recognition case], BIA essentially conceded that the otherwise dispositive fourth TRAC factor – the effect of expediting delayed action on agency activities of a higher or competing priority – is of no weigh [sic] at all."

By claiming that a specific holding of the district court was erroneous, and stating at least one basis for its claim of error, the Secretary provided more detail than was held insufficient in the cases upon which Mashpee relies. *See, e.g., Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001) (argument that district court "misapplied fundamental principles of contract law" provides "no greater specificity than saying nothing at all").

In sum, because we conclude that the Secretary's motion for reconsideration was both timely and sufficiently particular, the time for the Secretary to notice this appeal began to run, pursuant to FRAP 6(a), only when the district court denied the motion. The Secretary's appeal is therefore timely.

B.   Unreasonable delay

We turn now to the district court's conclusion that the BIA failed to act upon Mashpee's petition within a reasonable time. But first a word about the district court's jurisdiction.

The Secretary argues that because the BIA did not in its regulations impose upon itself a "mandatory, nondiscretionary duty to begin to consider the Mashpee petition" by a time certain, the district court "lacked jurisdiction to exercise

mandamus to compel Interior to place the Mashpee petition on active consideration." That argument reflects a misunderstanding of the nature of Mashpee's claim.

Mashpee did not seek an order directing the BIA to comply with its own regulations. Rather, Mashpee's claim arose under the Administrative Procedure Act, which imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). Because no statute restricts judicial review of the BIA's recognition determinations to the Courts of Appeals, *compare TRAC*, 750 F.2d at 77–78, the district court had jurisdiction under 28 U.S.C. § 1331 ("federal question") to determine whether the BIA was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706. *See Cutler v. Hayes*, 818 F.2d 879, 887 n.61 (D.C. Cir. 1987); *cf. TRAC*, 750 F.3d at 79. *See also Costle v. Pacific Legal Foundation*, 445 U.S. 198, 220 n.14 (1980).

Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court. In *TRAC*, we drew from our previous cases some factors usually relevant to the inquiry. 750 F.2d at 80. They include: any statutory timetable "or other indication of the speed with which [the Congress] expects the agency to proceed"; "the nature and extent of the interests prejudiced by delay," with particular concern for matters of "human health and welfare"; and "the effect of expediting delayed action on agency activities of a competing or higher priority." *Id.* We stated that "the time agencies take to make decisions must be governed by a 'rule of reason,'" and that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* (citations omitted); s*ee also Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001).

The parties agree that the delay experienced by Mashpee and other groups seeking recognition as a tribe is attributable, at least for the most part, to a shortage of resources addressed to an extremely complex and labor-intensive task. Each petition is evaluated against a demanding set of regulatory criteria by a three-person team comprising an historian, a cultural anthropologist, and a genealogist. At the time of the GAO Report, there were 13 petitions under active consideration and 10 more on the "ready" list. GAO Report, *above*, at 15. Yet in the previous five years, the number of BIA staff assigned to evaluate petitions had been on average fewer than 11. *Id.* at 16. The rise of the Indian gaming industry over the last 15 or so years, *see id.* at 32–38, *California v. Cobazon Band of Mission Indians*, 480 U.S. 202 (1987) (confirming authority of tribes to establish gambling operations without regard to state regulation), has only exacerbated the problem. GAO Report at 29. In recent years, interested parties have turned repeatedly to the Congress to request additional resources, but to no avail. *Id.* at 2.

Thus is it that under the present system a petitioner waits for years in the queue for active consideration. By the time Mashpee filed this lawsuit, its petition had been on the "ready" list for five years and it was still only third in line. Of course, other petitioners had been waiting longer for a decision, and the Secretary claimed that because of the agency's limited resources any relief to Mashpee would necessarily come at the expense of those applicants.

We have noted before the importance of "competing priorities" in assessing the reasonableness of an administrative delay. *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (1991), we refused to grant relief, even though all the other factors considered in *TRAC* favored it, where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." There the petitioner was one of many firms waiting for the FDA to pass upon their applications to produce generic drugs. There was no evidence the agency had treated the petitioner differently from anyone else, or that "officials not working on Barr's matters . . . [were just] twiddling their

thumbs." *Id.* The problem stemmed from a lack of re-
sources; that, the court held, was "a problem for the political
branches to work out." *Id.* The court also noted that

> [t]he agency is in a unique — and authoritative —
> position to view its projects as a whole, estimate the
> prospects for each, and allocate its resources in the
> optimal way. Such budget flexibility as Congress has
> allowed the agency is not for us to hijack.

*Id.* at 76.

The district court recognized the force of *Barr* in this case:
"Not only must BIA juggle competing duties under the
Acknowledgment Regulations and increasing collateral duties
with relatively limited resources, but the injury claimed by
Mashpee is applicable to all groups petitioning for acknowl-
edgment." 180 F. Supp. 2d at 136 (citations omitted). In-
deed, the district court believed full "application of the *TRAC*
factors would . . . have dictated the denial of relief to the
Mashpee in this case: Congress knows about the situation
but has not yet taken definitive action to correct it, and BIA
is plugging along with its limited resources, business as usual,
doing the best it can." *Id.*

Nevertheless, the district court declined to apply the "com-
peting priorities" factor because it believed that, by failing to
appeal a district court order in another case, *Muwekma Tribe
v. Babbitt*, 133 F. Supp. 2d 30 (D.D.C. 2000), in which a
petitioner was allowed to vault to the head of the queue, the
Secretary "essentially conceded that [this] otherwise disposi-
tive . . . factor . . . is of no weight at all." *Id.*

The Secretary argues, as she argued in her motion for
reconsideration by the district court, that the court was
wrong to attach such significance to her predecessor's failure
to appeal an adverse decision in another case. She points out
that the plaintiffs in *Muwekma* had a claim to expedited
review on the ground that their putative tribe previously had
been recognized. *See* 25 C.F.R. § 83.8 (exempting from all
other regulatory criteria petitioner that "provides substantial
evidence of unambiguous previous Federal acknowledg-

ment"). Furthermore, the Secretary argues that there is no legal basis — for example, in any estoppel doctrine — for prohibiting her from pleading competing priorities and relying upon *Barr* in the present case.

Mashpee does not directly dispute the Secretary's points. It argues instead that the district court found as a fact the BIA was "willing[ ] to allow one tribe to be moved ahead of others," and that finding is entitled to deference.

We agree with the Secretary that the district court erred by disregarding the importance of there being "competing priorities" for limited resources. The district court offered no legal justification for precluding the Secretary from relying upon her "first-come" procedure, and we can conjure none. If, as Mashpee suggests, the district court inferred from the Secretary's failure to appeal the *Muwekma* decision that, as a matter of fact, the Department had abandoned its interest in that procedure as a means of ordering its priorities, then that finding was clearly erroneous. It should have been clear to the district court from the different circumstances of the putative tribes in the two cases — as explained by the Secretary in her motion for reconsideration — that such an inference was unwarranted, especially on a motion for summary judgment, in which the court may not rely upon any but undisputed facts. In any event, the district court's approach was inconsistent with its obligation, in a case of allegedly unreasonable delay, to examine "the facts of [the] particular case" before it, *Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987), and cannot be countenanced in light of *Barr* and of the obvious significance of competing priorities on the present record.

We shall therefore send the case back to the district court for a full and fresh evaluation of whether the delay Mashpee is encountering should be deemed "unreasonable." The ultimate issue, as in all such cases, will be whether the time the BIA is taking to act upon the Mashpee's petition satisfies the "rule of reason." That issue cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but

will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.

Because we conclude that the district court's finding of unreasonable delay cannot stand, we need not address the Secretary's claim that the district court erred by requiring the BIA to decide the petition within one year. We note, however, that the requirement of a reviewing court under the APA to "compel agency action unreasonably delayed" leaves room for the district court to exercise discretion in determining how soon the agency must act. We also note that, if the district court is unable to conclude that the delay to date has been unreasonable, then it may nevertheless retain jurisdiction over the case in order to monitor the agency's assurances that it is proceeding as diligently as possible with the resources available to it. *See TRAC*, 750 F.2d at 80.

### III. Conclusion

The Secretary's appeal is timely. The district court erred by holding the decision of the Secretary had been unreasonably delayed without first considering the BIA's limited resources and the effect of granting relief upon other equally-deserving petitioners for recognition. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

*So ordered.*