Rola **HAMANDI**, Plaintiff,

v.

Michael **CHERTOFF**, Secretary, U.S. Department of Homeland Security, et al., Defendants.

Civil Action No. 07–2153(ESH).

United States District Court, District of Columbia.

May 6, 2008.

J. Michael Springmann, Law Office of J. Michael Springmann, Washington, DC, for Plaintiff.

Robin Michelle Meriweather, Assistant United States Attorney, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

ELLEN SEGAL HUVELLE, District Judge.

Pursuant to the Mandamus Act and the Administrative Procedure Act, plaintiff Rola Hamandi seeks to compel defendants, who are the heads of various United States government agencies with responsibilities relating to citizenship and immigration, to adjudicate without further delay her pending application for naturalization. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth herein, the Court grants the motion with respect to defendant Robert S. Mueller III, Director of the Federal Bureau of Investigation

("FBI"), but it denies the motion as to defendants Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"), and Emilio T. Gonzalez, Director of the United States Citizenship and Immigration Services ("USCIS").

## BACKGROUND

Plaintiff is a citizen and a national of both France and Lebanon. (Pet. for Writ Mandamus ("Pet.") ¶¶ 6, 16.) She has lived in the United States since 1990, and has been a legal permanent resident since October 2, 2001. (*Id.*)

Defendants are the Secretary of DHS, the Director of USCIS, and the Director of the FBI. USCIS, which is part of DHS, has responsibility for adjudicating citizenship applications, and the FBI performs criminal background checks, including the FBI "name check," with respect to applicants for U.S. citizenship. (*Id.* ¶ 14.)

Plaintiff filed an application for naturalization (form N–400) with USCIS on July 31, 2006. (*Id.* ¶ 17.) In May and July 2007, plaintiff contacted USCIS by telephone about the status of her application, but was given no information. (*Id.* ¶ 18.) On August 16, 2007, upon traveling in person to USCIS's Miami District Office, plaintiff was told that her application was delayed because the required FBI name check had not yet been completed. (*Id.*) The Office followed up with a letter dated September 15, 2007, in which it stated that "[a] check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open." (*Id.* Ex. 4.) In addition, USCIS failed to schedule plaintiff for the requisite interview and test of her language abilities and knowledge of U.S. history and culture. (*Id.* ¶ 7.) Accordingly, on November 29, 2007, plaintiff filed this action seeking to compel defendants to process her naturalization application.

## ANALYSIS

### I. STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A court must accept as true all factual allegations in the complaint, and give plaintiff the benefit of all reasonable inferences from the facts alleged. *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). However, a court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are "unsupported by the facts set out in the complaint." *Trudeau v. FTC,* 456 F.3d 178, 193 (D.C.Cir.2006) (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). In considering the sufficiency of a plaintiff's allegations for this purpose, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C.Cir. 1992).

### II. JURISDICTION

Plaintiff contends that this Court has jurisdiction to compel defendants to adjudicate her application pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* and the Mandamus Act, 28 U.S.C. § 1361. (Pet. ¶ 2.) She claims that defendants have a nondiscretionary duty to adjudicate her application within a reasonable time, and since they have failed to do so, the Court should compel them to act.[1] Defendants, on the

---

1. Plaintiff also raises other allegations and requests additional relief in her opposition to defendants' motion to dismiss. Specifically, plaintiff contends that USCIS "expanded the

other hand, contend that Section 336(b) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1447(b), which permits an applicant for naturalization to bring an action in federal district court if USCIS fails to act on the application within 120 days of having examined the applicant,[2] provides a court with a specific and exclusive jurisdictional grant, and plaintiff may not circumvent the limitations of the statute by means of the APA or a mandamus action. Moreover, defendants claim that relief under the APA and the Mandamus Act is unavailable because USCIS has no clear nondiscretionary duty to complete the adjudication of plaintiff's application prior to the receipt of her name check results and completion of her interview, and no statute or regulation gives USCIS a nondiscretionary duty to request expe-

dited background checks or imposes any limitations on the FBI's discretion regarding the timetable for conducting name checks.

## A. Jurisdiction Under the APA

■■■ Pursuant to the APA, a person adversely affected by agency action is entitled to judicial review. 5 U.S.C. § 702. Agency action includes the failure to act. *Id.* § 551(13). Because the APA requires agencies to conclude matters presented to them "within a reasonable time," *id.* § 555(b), a court may sometimes "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S.*

FBI name check in November 2002" without promulgating a proposed rule or giving notice and an opportunity for public comment and requests that the Court order defendants to comply with the APA's notice and comment requirements. (Opp'n at 8–9, 19.) Plaintiff also alleges for the first time in her opposition that defendants are discriminating against her on the basis of race and religion in violation of 42 U.S.C. § 2000e. (*Id.* at 12.) Such claims, having been raised for the first time in plaintiff's opposition, are not properly before the Court. *See Sharp v. Rosa Mexicano,* 496 F.Supp.2d 93, 97 n. 3 (D.D.C.2007) ("[P]laintiff may not, through summary judgment briefs, raise the new claims ... because plaintiff did not raise them in his complaint, and did not file an amended complaint."); *DSMC, Inc. v. Convera Corp.,* 479 F.Supp.2d 68, 84 (D.D.C.2007) (rejecting plaintiff's attempts to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment).

Moreover, the Court will not further address plaintiff's assertion that defendants violated ethics rules by failing to notify her counsel prior to filing a request for extension of time and by failing to serve counsel with the motion once filed. (*See* Opp'n at 2.) The Court denied plaintiff's motion to strike and will not revisit that issue here, and as defendants point out, their motion to dismiss was

properly filed and served through the Court's CM/ECF system. *See* LCvR 5.4.

Finally, the Court notes that plaintiff filed an unauthorized surreply, which is not properly before the Court. *See* LCvR 7. In addition, plaintiff's surreply adds nothing that would change the Court's conclusions.

**2.** 8 U.S.C. § 1447(b) states:

If there is a failure to make a determination [on the applicant's naturalization application] before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

While courts are split over whether the reference in the statutory provision to an "examination" refers to the applicant's interview, *see, e.g., Khelifa v. Chertoff,* 433 F.Supp.2d 836, 841–42 (E.D.Mich.2006), or the entire naturalization process, including all facets of the background investigation, *see, e.g., Danilov v. Aguirre,* 370 F.Supp.2d 441 (E.D.Va. 2005), that issue is not relevant here, as plaintiff has not been interviewed.

*Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis in original). Thus, a plaintiff may invoke subject matter jurisdiction under the APA only if the defendant had a duty to perform a ministerial or nondiscretionary act. *See id.* As the D.C. Circuit has recently explained, "when an agency is compelled by law to act, but the manner of its action is left to the agency's discretion, the 'court can compel the agency to act, [although it] has no power to specify what th[at] action must be.'" *Kaufman v. Mukasey,* 524 F.3d 1334, 1338 (D.C.Cir.2008) (quoting *Norton,* 542 U.S. at 65, 124 S.Ct. 2373) (alterations in original). While the APA does not confer subject matter jurisdiction by itself, the APA in conjunction with 28 U.S.C. § 1331 (which gives federal district courts federal question jurisdiction) gives the Court jurisdiction to compel unreasonably delayed agency action. *See Califano v. Sanders,* 430 U.S. 99, 106–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

### 1. The Court Has Jurisdiction Over Plaintiff's Claim Against USCIS Pursuant to the APA

■ As the agency responsible for adjudication of naturalization applications, USCIS has a mandatory, nondiscretionary duty to fulfill this role. Both the INA and USCIS regulations make this duty clear. Specifically, the statute and regulations require that after the filing of a naturalization application, USCIS must conduct a background investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. The agency must also conduct an examination of the applicant. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(a). The examiner "shall make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(d). *See also* 8 C.F.R. § 316.14(b)(1) ("Subject to supervisory review, the employee of [USCIS] who conducts the examination [on an application for naturalization] shall determine whether to grant or deny the application, and shall provide reasons for the determination. . . ."); 8 C.F.R. § 335.3(a) (USCIS "shall grant the application if the applicant has complied with all requirements for naturalization . . .").[3]

Because USCIS is required to adjudicate naturalization applications, it must do so in a reasonable amount of time. That the INA does not specify a timeframe for action (at least not prior to plaintiff's examination) is immaterial; the APA's requirement of action within a reasonable time applies. The D.C. Circuit's decision in *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094 (D.C.Cir. 2003), is highly instructive. In that case, the Court upheld the district court's determination that it had jurisdiction pursuant to the APA over a tribal council's suit to compel the Bureau of Indian Affairs ("BIA") to act on the council's petition for recognition as an Indian tribe. The council's petition had been placed in a queue, with priority established on a first-come basis. While recognizing that "[n]o statute or regulation specifies how quickly the queue must move along—in contrast to the timeframe for processing a petition once it is under active consideration," the Court nevertheless found that the district court had general federal question jurisdiction under 28 U.S.C. § 1331 to determine whether the BIA was in violation of the APA's requirement that agencies must act

---

**3.** These statutory and regulatory provisions make reference to the Attorney General and the "Service." The Service is defined as the Immigration and Naturalization Service ("INS"). 8 U.S.C. § 1101(a)(34). Prior to 2002, however, the Attorney General delegated his authority under the INA to the INS, 8 C.F.R. § 100.2, and in that year, Congress abolished the INS and reassigned its duties with regard to the adjudication of naturalization applications to USCIS. 6 U.S.C. § 271(b).

within a reasonable time, and if such a determination was made, it could issue an order compelling action pursuant to 5 U.S.C. § 706. 336 F.3d at 1097, 1100. Similarly, in this case, while no statute or regulation specifies how quickly USCIS must move naturalization applications along, in contrast to the timeframe for processing an application once the petitioner's examination has been completed, the Court nonetheless has jurisdiction "to compel the agency to act." [4] *Kaufman,* 524 F.3d at 1338. Moreover, that determinations regarding immigration and national security are at issue does not necessarily preclude judicial review under the APA. As the D.C. Circuit recently noted:

> [A]lthough determinations regarding national security are matters that courts acknowledge are generally beyond their ken, *see, e.g., INS v. Aguirre–Aguirre,*

526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), a failure to make a determination can be reviewable under the APA.... [W]e do not understand the government to suggest that a congressionally created right can be nullified by government inaction.

*Kaufman,* 524 F.3d at 1340–41 (citation omitted).

In sum, "[e]ven though neither the statute nor regulations establish a definitive deadline for scheduling an examination that does not mean that [US]CIS possesses 'unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely.' " *Hanbali v. Chertoff,* No. 3:07CV–50–H, 2007 WL 2407232, at *3, 2007 U.S. Dist. LEXIS 65742, at *7 (W.D.Ky. Aug. 17, 2007) (quoting *Kaplan v. Chertoff,* 481 F.Supp.2d 370, 399 (E.D.Pa.2007)).[5]

---

4. The Court rejects defendants' contention, supported by the district court's decision in *Danilov v. Aguirre,* 370 F.Supp.2d 441 (E.D.Va.2005), that 28 U.S.C. § 1447(b) provides plaintiff's exclusive remedy. In support of this premise, defendants and the *Danilov* court relied primarily on *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In that case, the Supreme Court found that

> the comprehensive nature of the [Civil Service Reform Act], the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review ... combine to establish a congressional judgment that those employees should not be able to demand judicial review....

484 U.S. at 448, 108 S.Ct. 668. The statute here is unlike the Civil Service Reform Act, and therefore, the Court is unwilling to presume that Congress specifically intended to foreclose judicial review prior to a naturalization applicant's examination from the mere fact that it provided for such review thereafter, especially given the fact that § 1447(b) was intended to speed review of such applications. *See Bustamante v. Chertoff,* 533 F.Supp.2d 373, 378 (S.D.N.Y.2008).

5. While many district courts have held that USCIS has a nondiscretionary duty under the APA or the Mandamus Act to adjudicate naturalization applications within a reasonable time, this view is far from unanimous. *See, e.g., Sidhu v. Chertoff,* No. 1:07–CV–1188 AWI SMS, 2008 WL 540685, at *6, 2008 U.S. Dist. LEXIS 13804, at *19 (E.D.Ca. Feb. 25, 2008) (finding that USCIS has mandatory duty to adjudicate naturalization applications within a reasonable time); *Moretazpour v. Chertoff,* No. C 07–4264 BZ, 2007 WL 4287363 at *2, 2007 U.S. Dist. LEXIS 92047, *8–9 (N.D.Ca. Dec. 5, 2007) (same); *Assadzadeh v. Mueller,* No. 07–2676, 2007 WL 3252771, at *5, 2007 U.S. Dist. LEXIS 80915, at *13–14 (E.D.Pa. Oct. 31, 2007) (same). *But see, e.g., Ibrahim v. Chertoff,* 529 F.Supp.2d 611 (E.D.N.C. Dec.28, 2007) (finding no jurisdiction under APA or Mandamus Act because no right to have naturalization application adjudicated or name check completed within a specific time); *Omar v. Mueller,* 501 F.Supp.2d 636, 639–40 (D.N.J.2007) (same); *Badier v. Gonzales,* 475 F.Supp.2d 1294, 1297–99 (N.D.Ga. 2006) (finding no jurisdiction under APA or Mandamus and Venue Act because scheduling of applicant's examination within agency's discretion). The Court finds the reasoning of those courts that have found jurisdiction to be

## 2. The Court Does Not Have Jurisdiction Over Plaintiff's Claim Against the FBI Pursuant to the APA

■ In contrast to USCIS's duty under the INA and associated regulations to adjudicate naturalization applications, the FBI has no adjudicative responsibilities with respect to such applications. Furthermore, "no statute or regulation cited ... by plaintiff expressly creates a mandatory duty owed by the FBI to individual naturalization applicants to process background and name checks and forward the results of these checks to the USCIS." *Costa v. Chertoff*, No. 07–2467, 2007 WL 4456218, at *4, 2007 U.S. Dist. LEXIS 92666, at *13 (E.D.Pa. Dec. 17, 2007). Accordingly, the Court lacks jurisdiction over plaintiff's APA claim against the FBI.[6]

The courts that have asserted jurisdiction over the FBI to compel the agency to process background checks have principally relied on the rationale set forth in *Kaplan v. Chertoff*, 481 F.Supp.2d 370 (E.D.Pa. 2007). While the court in *Kaplan* acknowledged that "there appears to be no single statute that, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks," it

nevertheless found that Congress had imposed such a duty on the FBI based on "a number of Congressional enactments." *Id.* at 400. Specifically, the court noted that (1) pursuant to the 1998 Department of Justice Appropriations Act, Pub. L. No. 105–119, Title I, 111 Stat. 2440, 2448 (1997), Congress prohibits USCIS from using any funds to complete adjudication of naturalization applications until it has received confirmation from the FBI that full criminal background checks have been completed;[7] (2) in the 1991 Department of Justice Appropriations Act, Pub. L. No. 101–515, 104 Stat. 2101, 2112 (1990), Congress authorized the FBI to establish and collect fees to cover name check costs;[8] and (3) pursuant to 8 C.F.R. §§ 316.4 and 334.2, USCIS requires applicants for naturalization to submit an application fee, "a portion of which the [US]CIS pays over to the FBI for fingerprint and name checks." 481 F.Supp.2d at 400–01. Based on these factors, the court concluded that "Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks." *Id.* at 401.

This Court finds the *Kaplan* court's analysis unpersuasive and agrees with the

---

the more persuasive for the reasons stated herein.

6. Other courts have likewise found that the FBI does not owe a duty to applicants for naturalization to process their background checks. *See, e.g., Sinha v. Upchurch*, No. 1:07CV2274, 2007 WL 4322225, at *5, 2007 U.S. Dist. LEXIS 90286, at *14 (N.D.Ohio Dec. 7, 2007) (finding "no congressional mandate requiring the FBI Defendants to process plaintiff's background check"); *Shalabi v. Gonzales*, No. 4:06CV866 RWS, 2006 WL 3032413, at *5, 2006 U.S. Dist. LEXIS 77096, at *15 (E.D.Mo. Oct. 23, 2006) (finding no clear nondiscretionary duty where no statute or regulation imposes a deadline for the FBI to complete a criminal background check). *But see Zagrebelny v. Frazier*, No. 07–1682 (PAM/JSM), 2008 WL 624072, 2008 U.S. Dist. LEXIS 16641 (D.Minn. Mar. 4, 2008) (FBI

has a mandatory duty to complete its background check within a reasonable time even though that duty is not expressly stated in a statute) and cases cited therein.

7. The Act specifically states:

[D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed....

8. That provision states that the FBI "may establish and collect fees to process identification records and name checks."

reasoning of other courts that have refused to infer a mandatory duty owed by the FBI to naturalization applicants. *See supra* note 6. First, the 1998 Department of Justice Appropriations Act is addressed to USCIS, not the FBI and "establishes conditions that USCIS must satisfy to access appropriated funds." *Antonishin v. Keisler,* No. 06CV2518, 2007 WL 2788841, at *6, 2007 U.S. Dist. LEXIS 70063, at *22 (N.D.Ill. Sept. 20, 2007). Thus, "it is at best unclear whether Congress intended to impose any mandatory duty on the FBI." *Id.* Moreover, it is difficult to see how the fact that Congress permits the FBI to recover the costs of performing name checks creates a duty by the FBI to naturalization applicants. Finally, USCIS regulations requiring naturalization applicants to pay an application fee do not mention the FBI and do not, on their face, require remission of any fee to the FBI. The fact that USCIS remits a portion of the application fees it receives to the FBI would at most indicate an obligation by the FBI to USCIS, but it would not establish a duty to any individual applicant. *See Costa v. Chertoff,* No. 07–2467, 2007 WL 4456218, at *6, 2007 U.S. Dist. LEXIS 92666, at *16–17 (E.D.Pa. Dec. 17, 2007) (noting that 1991 Appropriations Act is "permissive in nature, allowing the FBI to collect fees for processing background checks, but in no way imposing a clear, mandatory duty on the FBI" and stating with respect to 8 C.F.R. § 334.2 that since the regulation does not mention the FBI, the court "will not infer a mandatory duty on the part of the FBI based upon a regulation concerning a different agency" (internal quotation and citation omitted)). Importantly, none of these provisions actually mandates that the FBI perform a background check nor does USCIS possess the ability to do so.

For these reasons, the Court concludes that it has no jurisdiction over the FBI defendant under the APA.

## B. Jurisdiction Under the Mandamus Act

The extraordinary writ of mandamus is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. United States Dist. Court,* 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotations and citation omitted); *accord Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). Mandamus relief is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.,* 414 F.3d 7, 10 (D.C.Cir.2005) (citations omitted). The duty to be compelled must be nondiscretionary. *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988).

### 1. The Court Need Not Decide Whether it Has Jurisdiction Over USCIS Pursuant to the Mandamus Act

Because the Court finds that it has jurisdiction over USCIS pursuant to 28 U.S.C. § 1331 and the APA, it need not reach the question of whether mandamus is available to compel action by the agency on plaintiff's application. *See Action Alliance of Senior Citizens v. Leavitt,* 483 F.3d 852, 858 (D.C.Cir.2007) (noting standard rule that existence of an alternative remedy precludes mandamus); *Valona v. U.S. Parole Comm'n,* 165 F.3d 508, 510 (7th Cir.1998) ("APA ... authorizes district courts to 'compel agency action unlawfully withheld or unreasonably delayed' without the need of a separate action seeking mandamus").

### 2. The Court Lacks Jurisdiction Over the FBI Pursuant to the Mandamus Act

■ For the same reasons that the Court lacks jurisdiction over the FBI pursuant to the APA, it also lacks mandamus jurisdiction. No law obligates the FBI to perform background checks, and the FBI does not owe plaintiff a nondiscretionary duty to process her background check.

### C. Whether USCIS has Engaged in Unreasonable Delay

■ While the court has jurisdiction over USCIS, the determination of whether an agency's delay is unreasonable is a fact specific inquiry that is premature at this stage of the proceedings. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee,* 336 F.3d at 1100 (discussing factors set forth in *Telecomms. Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984), for determining whether agency has engaged in unreasonable delay).

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [# 12] will be granted with respect to defendant Robert S. Mueller III and denied in all other respects. A status conference is hereby set for June 2, 2008, at 9:30 a.m.